NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 23-7042

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

ANTHONY D. GIVENS, *et al.*,
APPELLANTS,

V.

MURIEL BOWSER, *et al.*,
APPELLEES.

ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**BRIEF FOR APPELLEES**

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

THAIS-LYN TRAYER
Deputy Solicitor General
Office of the Solicitor General

Office of the Attorney General
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 255-3681
thais-lyn.trayer@dc.gov

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

A. *Parties and amici*.—Eugene A. Adams is no longer the Chief Judge of the Office of Administrative Hearings and should be substituted by M. Colleen Currie, the current Chief Judge. Otherwise, all parties, intervenors, and amici appearing before the district court and this Court are listed in the Brief for Appellant.

B. *Ruling under review*.—References to the rulings at issue appear in the Brief for Appellant.

C. *Related cases*.—This case has not previously been before this Court or any other court.  Counsel is unaware of any related cases within the meaning of Circuit Rule 28(a)(1)(C).

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................... iv

GLOSSARY.........................................................................................x

STATEMENT OF THE ISSUES............................................................1

STATEMENT OF THE CASE..............................................................2

    1.    Statutory And Regulatory Background .................................2

    2.    Factual And Procedural History ...........................................5

        A.    The OAH proceedings ................................................6

        B.    Givens's complaint in federal district court................7

        C.    Givens's death............................................................8

        D.    The magistrate judge's dismissal for mootness and failure to state a claim.............................................9

        E.    Appellants' motions for substitution, for leave to file a proposed second amended complaint, and to object to the report and recommendation ......................................11

        F.    The district court's dismissal for mootness and failure to state a claim...........................................................13

        G.    The district court's denial of reconsideration ...........15

STANDARD OF REVIEW ...................................................................15

SUMMARY OF ARGUMENT ..............................................................16

ARGUMENT ......................................................................................18

    I.    All Of The Claims In The First Amended Complaint Are Moot........18

        A.    All of the individual claims against the District are moot ........18

B.    Uncertified class claims cannot keep this suit alive ................25

II.    Even If The Claims In The First Amended Complaint Were Not Moot, They Fail To Establish Liability Under 42 U.S.C. § 1983 .......30

A.    The first amended complaint does not plausibly establish municipal liability for any alleged violation ............................31

B.    The first amended complaint does not assert the violation of any federal right ...................................................................37

III.    The District Court Did Not Err In Dismissing The Complaint With Prejudice .......................................................................44

A.    Appellants are not proper plaintiffs for the purpose of filing a second amended complaint ...........................................45

B.    Substitution would have been improper in any event..............47

C.    Moreover, granting leave to amend would have been futile...................................................................................50

CONCLUSION ........................................................................53

# TABLE OF AUTHORITIES*

*Cases*

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ........................................................... 43

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015) ........................... 37

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................. 32, 34

*Baker v. District of Columbia*,
    326 F.3d 1302 (D.C. Cir. 2003) ....................................... 30, 31, 33, 37

*Bd. of Sch. Comm'rs of Indianapolis v. Jacobs*,
    420 U.S. 128 (1975) ................................................................................. 27

*Belizan v. Hershan*, 434 F.3d 579 (D.C. Cir. 2006) ........................................ 46, 47

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................... 34, 35, 51

*Blessing v. Freestone*, 520 U.S. 329 (1997) ............................................. 30, 38, 39

*Blue v. District of Columbia*, 811 F.3d 14 (D.C. Cir. 2015) ................... 31, 32, 33

*Brink v. Continental Ins. Co.*, 787 F.3d 1120 (D.C. Cir. 2015) ....................... 46, 47

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994) ................................................................................. 43

*City of Canton v. Harris*, 489 U.S. 378 (1989) ..................................................... 20

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982) .......................... 24

*Cobell v. Jewell*, 802 F.3d 12 (D.C. Cir. 2015) .................................................... 25

*Cohen v. United States*, 650 F.3d 717 (D.C. Cir. 2011) ........................................ 50

*Conservation Force, Inc. v. Jewell*, 733 F.3d 1200 (D.C. Cir. 2013) ............. 19, 20

---

\*    Authorities upon which we chiefly rely are marked with asterisks.

*Davis v. Shah*, 821 F.3d 231 (2d Cir. 2014) ............................................................ 41

*Dyson v. District of Columbia*, 710 F.3d 415 (D.C. Cir. 2013) .............................. 16

*Evangelical Lutheran Good Samaritan Soc'y v. Betlach*,
    No. 16-CV-8169, 2017 WL 3334870 (D. Ariz. Aug. 4, 2017) ........................ 41

*Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996) ................................... 46, 47

*Foman v. Davis*, 371 U.S. 178 (1962) .................................................................. 50

*Garnett v. Zeilinger*, 323 F. Supp. 3d 58 (D.D.C. 2018) ................................ 28, 29

*Gean v. Hattaway*, 330 F.3d 758 (6th Cir. 2003) .................................................. 43

*Genesis Healthcare Corp. v. Symcyk*, 569 U.S. 66 (2013) ................ 18, 19, 25, 27

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) ........................................... 38, 39, 41

*Gull Airborne Instruments, Inc. v. Weinberger*,
    694 F.2d 838 (D.C. Cir. 1982) ..................................................................... 48

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
    599 U.S. 166 (2023) ................................................... 38, 39, 41, 42, 44

*Hobbs v. Zenderman*, 579 F.3d 1171 (10th Cir. 2009) ......................................... 41

*Holmes v. Pension Plan of Bethlehem Steel Corp.*,
    213 F.3d 124 (3d Cir. 2000) .......................................................................... 27

*Hurd v. District of Columbia*, 997 F.3d 332 (D.C. Cir. 2021) ............................. 31

*Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67 (1983) .................................... 18

*J.D. v. Azar*, 925 F.3d 1291 (D.C. Cir. 2019) ......................................... 26, 27, 28

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*,
    895 F.3d 770 (D.C. Cir. 2018) ................................................................. 35, 36

*Kelleher v. Dream Catcher, L.L.C.*, 263 F. Supp. 3d 322 (D.D.C. 2017) ............. 35

*Lane v. District of Columbia*, 887 F.3d 480 (D.C. Cir. 2018) .............................. 21

*Lankford v. Sherman*, 451 F.3d 496 (8th Cir. 2006)........................................ 38, 41

*Lightfoot v. District of Columbia*, 629 F. Supp. 2d 16 (D.D.C. 2009) .................. 48

*Medtronic, Inc. v. Mirowski Family Ventures*, 571 U.S. 191 (2014) .............. 23, 24

*\*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)......................... 30, 31, 34, 52

*Monzillo v. Biller*, 735 F.2d 1456 (D.C. Cir. 1984)................................................ 19

*Mundo Verde Pub. Charter Sch. v. Sokolov*,
    315 F. Supp. 3d 374 (D.D.C. 2018)................................................................. 24

*Nasello v. Eagleson*, 977 F.3d 599 (7th Cir. 2020) ............................................... 41

*Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101 (D.D.C. 2013) ...................... 50

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*,
    366 F.3d 930 (D.C. Cir. 2004)......................................................................... 50

*Parratt v. Taylor*, 451 U.S. 527 (1981) ................................................................. 34

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ............................................ 33

*Reid v. Hurwitz*, 920 F.3d 828 (D.C. Cir. 2019)................................................... 28

*Rende v. Kay*, 415 F.2d 983 (D.C. Cir. 1969)........................................................ 49

*Richards v. Delta Air Lines, Inc.*, 453 F.3d 525 (D.C. Cir. 2006)........................ 26

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)............................................ 29, 30

*Shakhnes ex rel. Shakhnes v. Eggleston*,
    740 F. Supp. 2d 602 (S.D.N.Y. 2010) ............................................................. 29

*Shakhnes v. Berlin*, 689 F.3d 244 (2d Cir. 2012) ............................................ 29, 44

*Singletary v. District of Columbia*, 766 F.3d 66 (D.C. Cir. 2014) ........................ 33

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950)............................. 23

*Sosna v. Iowa*, 419 U.S. 393 (1975) ....................................................................... 25

*U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980) .................................. 26, 27

*United States v. Alaska S.S. Co.*, 253 U.S. 113 (1920) ............................................ 18

*United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*,
    45 F.4th 426 (D.C. Cir. 2022) .................................................................... 24, 26

*Valley Forge Christian Coll. v. Ams. United for Separation of Church &*
    *State, Inc.*, 454 U.S. 464 (1982) ...................................................................... 18

*Warren v. District of Columbia*, 353 F.3d 36 (D.C. Cir. 2004) .............................. 33

*Wash. Reg'l Medicorp v. Burwell*, 813 F.3d 357 (D.C. Cir. 2015) ........................ 37

*Watson v. Weeks*, 436 F.3d 1152 (9th Cir. 2006) ................................................... 41

*Wicomico Nursing Home v. Padilla*,
    No. 16-CV-1078, 2017 WL 4457770 (D. Md. Aug. 18, 2017) ........................ 42

*Wilson v. Gordon*, 822 F.3d 934 (6th Cir. 2016) .................................................... 29

*Worley v. Islamic Republic of Iran*, 75 F. Supp. 3d 311 (D.D.C. 2014) ............... 48

*Zukerman v. U.S. Postal Serv.*, 961 F.3d 431 (D.C. Cir. 2020) .............................. 15

### Statutes and Regulations

D.C. Code § 1-307.02 ................................................................................................ 2

42 U.S.C. § 1396a ........................................................................2-4, 19, 39-44

42 U.S.C. § 1396d ..................................................................................... 5, 40, 42

42 U.S.C. § 1983 ........................ 1, 2, 7, 10, 11, 14-16, 17, 20, 22, 30, 31, 34, 37-39

29 DCMR § 900 ........................................................................................................ 3

29 DCMR § 6500 .................................................................................................... 19

29 DCMR § 9508 ...................................................................................................... 5

29 DCMR § 9515 ...................................................................................................... 3

29 DCMR § 9516 ................................................................. 3

29 DCMR § 9800 ................................................................. 3

29 DCMR § 9801 ................................................................. 3

29 DCMR § 9804 ................................................................. 4

42 C.F.R. § 431.220 ................................................... 5, 23, 43

42 C.F.R. § 431.244 ................................................... 5, 23, 43

42 C.F.R. § 435.4 ............................................................... 3

42 C.F.R. § 435.725 ................................................... 4, 20, 21

42 C.F.R. § 435.831 ........................................................... 3

42 C.F.R. § 447.10 ..................................................... 4, 19

42 C.F.R. § 447.25 ....................................................4, 19

## Other

*About*, OAH, https://oah.dc.gov/page/about ............................ 52

13C Charles Alan Wright et al., *Federal Practice and Procedure* § 3533.9.1
   (Apr. 2023 update) ................................................. 23

D.C. Medicaid State Plan § 4.20,
   https://dhcf.dc.gov/node/192872 ............................... 19

Fed. R. Civ. P. 1 ............................................................. 49

Fed. R. Civ. P. 6 ............................................................. 49

Fed. R. Civ. P. 12 ........................................................... 13

Fed. R. Civ. P. 15 ..................................................... 45, 47

Fed. R. Civ. P. 25 ................................................ 8, 9, 47, 48, 49

Fed. R. Civ. P. 72 ................................................................................................ 46

D.D.C. LCvR 72.3 ............................................................................................. 46

# GLOSSARY

| | |
|---|---|
| DHS | District of Columbia Department of Human Services |
| DHCF | District of Columbia Department of Health Care Finance |
| FOIA | Freedom of Information Act |
| JA | Joint Appendix |
| OAH | District of Columbia Office of Administrative Hearings |
| PEME | Pre-eligibility medical expense |
| RD | Record Document |

## STATEMENT OF THE ISSUES

Eva Mae Givens ("Givens") was a District of Columbia resident receiving medical assistance through Medicaid.  She sought to contest the amount of money the District had required her to contribute to her cost of care.  She filed this putative class-action lawsuit against the District, but a magistrate judge later issued a report and recommendation dismissing the suit because the District had corrected its calculation of Givens's cost-of-care contribution and provided the requested fair hearing.  Givens then passed away.

This appeal is brought by Givens's children, who, after Givens's death, were substituted for the limited purpose of objecting to the report and recommendation. The district court adopted the magistrate judge's recommendation and dismissed the suit for mootness, or, in the alternative, for failure to state a claim.  The issues on appeal are:

1.  Whether the individual and class claims in the first amended complaint are moot because Givens received all the relief she sought and subsequently died before class certification;

2.  Whether the first amended complaint fails to state a claim for municipal liability under 42 U.S.C. § 1983, where the complaint consists of a conclusory recital that the District has a "policy and/or practice" of committing violations and has done

so "to over 40 persons," and where appellants seek to enforce through Section 1983 as-yet unrecognized individual rights under the Medicaid Act; and

3.   Whether the district court properly dismissed the complaint with prejudice, where appellants were never substituted for the purpose of amending the complaint, fail to meet the requirements of Rule 25, and, in any event, propose a second amended complaint that does nothing to cure the deficiencies of the first amended complaint.

## STATEMENT OF THE CASE

### 1.     Statutory And Regulatory Background.

The federal government's health-insurance program for low-income, blind, or disabled persons—known as Medicaid—is a cooperative arrangement with state governments, including the District of Columbia.  JA 12.  Participating jurisdictions must submit to the Centers for Medicare and Medicaid Services state plans that outline, among other requirements, how residents may become eligible for Medicaid and how recipients' expected contribution to their cost of care will be calculated.  JA 12-14.  As long as those state plans comply with federal requirements, *see* 42 U.S.C. § 1396a, the federal government subsidizes the cost, JA 12.

Pursuant to those federal requirements, the District has instituted a state plan under Medicaid that provides benefits to, *inter alia*, aged, blind, and disabled individuals who are "medically needy."  JA 13; *see generally* D.C. Code § 1-307.02;

29 DCMR § 900 *et seq.* Medically needy individuals are those whose income level alone does not qualify them for Medicaid, but who qualify once eligible medical expenses are accounted for. *See* 42 C.F.R. § 435.4.

In the District, Medicaid eligibility determinations are made by the Department of Human Services ("DHS") and the Department of Health Care Finance ("DHCF"). JA 36. For medically needy individuals, the District determines whether the individual both requires a nursing-home level of care and meets the financial eligibility requirements. JA 13-14; *see generally* 29 DCMR § 9800. To determine financial eligibility, qualifying medical expenses, which can include projected expenses for nursing-home care, are deducted from an applicant's income. *See* 42 U.S.C. § 1396a(r)(1)(A)(ii); 42 C.F.R. § 435.831(f), (g)(1). This process is known as "spend down." JA 39; 42 C.F.R. § 435.831(d)-(f); *see* 29 DCMR § 9801.6. An applicant is financially eligible for Medicaid as a medically needy individual if their gross countable income after spend down is equal to or less than the District's Medically Needy Income Level, 29 DCMR § 9801.6, and their total non-exempt assets do not exceed $4,000 (as an individual), 29 DCMR §§ 9515.4, 9516; *see* JA 12.

Once an individual qualifies for Medicaid, federal law also requires deducting qualifying pre-eligibility medical expenses ("PEME") from their income for the purposes of determining the individual's contribution to cost of care, which is known

as "patient payability".  *See* 42 U.S.C. § 1396a(r)(1)(A)(ii); 42 C.F.R.
§ 435.725(c)(4)(ii); 29 DCMR § 9804.4(e)-(f); JA 39.  Determinations of patient
payability in the District are currently made by DHCF, though they were previously
implemented by DHS.  JA 36, 39.  Although federal law permits states to set
"reasonable limits" on the amounts deducted from a beneficiary's income for PEME,
42 U.S.C. § 1396a(r)(1)(A)(ii), the District has not done so, JA 14.

The patient payability amount "operates like a co-pay."  JA 74.  As relevant
here, participating long-term care providers are "expected to collect that amount
from the resident," while they separately bill DHCF "for the difference between that
amount and the amount [they] agreed to accept for providing services to Medicaid
beneficiaries."  JA 14.  Thus, except in limited circumstances not implicated here,
Medicaid long-term care benefits are paid *by* state agencies directly *to* providers.
*See* 42 C.F.R. §§ 447.10(d), 447.25 (permitting the inclusion in state plans of direct
payments to certain beneficiaries only for "physicians' or dentists' services"); D.C.
Medicaid State Plan § 4.20 (electing not to provide such payments),
https://dhcf.dc.gov/node/192872.

Federal law also requires that all jurisdictions participating in Medicaid
"provide for granting an opportunity for a fair hearing before the State agency to any
individual whose claim for medical assistance under the plan is denied or is not acted
upon with reasonable promptness."  42 U.S.C. § 1396a(a)(3).  "Medical assistance"

is defined by statute as "payment of *part* or all of the cost" of care "or the care and services themselves." *Id.* § 1396d(a) (emphasis added). Under federal regulations, a Medicaid recipient is additionally permitted to seek a hearing whenever "he or she believes the agency has taken an action erroneously." 42 C.F.R. § 431.220(a)(1). "Ordinarily," such hearings must result in "final administrative action" within 90 days of the request. 42 C.F.R. § 431.244(f); *see* 29 DCMR § 9508. The entity responsible for overseeing Medicaid hearings in the District is the Office of Administrative Hearings ("OAH"). JA 15.

## 2.     Factual And Procedural History

On February 26, 2019, Eva Mae Givens applied for Medicaid benefits. JA 15. According to Givens, as part of her application, she submitted copies of unpaid medical bills totaling $40,183.93 and covering the prior three-month period. JA 15. At that time, DHCF's longstanding policy, in compliance with federal law, was to deduct past medical expenses from the cost of care in determining patient payability. JA 39-40.

Givens was found eligible for medical assistance through Medicaid on May 17, 2019. JA 15. Following that initial eligibility determination, the District erroneously determined Givens's patient payability through a failure to deduct PEME. JA 15. As a result, Givens was required to contribute $2,044 each month to the cost of her long-term care, effective February 1, 2019 and lasting until April

2020.  JA 15, 58-59.  From February to December 2019, Givens received care at Stoddard Baptist Nursing Home.  JA 15.  After December 2019, Givens moved to Serenity Rehabilitation and Health Center.  JA 15-16.

### A.      The OAH proceedings.

On June 6, 2019, Givens filed a request for a fair hearing with OAH to contest her patient payability.  JA 16.  The hearing took place on March 5, 2020, but Givens's attorney was not prepared to proceed and requested a continuance.  JA 27.

On June 11, the continued hearing that Givens's counsel had requested took place.  JA 31.  However, because of an email mix-up, counsel was not aware of the new hearing date and did not appear.  JA 45-46.  The case was subsequently dismissed without prejudice.  JA 31.  Upon learning of the issue, on July 29, Givens's counsel submitted a motion to reconsider.  JA 48.  OAH subsequently granted the motion to vacate the order dismissing her hearing.

On December 15, OAH dismissed Givens's case with prejudice.  JA 67.  The hearing judge found that there was "no outstanding DHS Medicaid denial or adverse action to adjudicate," JA 65, because the District had already corrected its initial error in calculating Givens's patient payability and issued corrective payments to her providers, JA 66-67.  As a result, there was "no requirement or basis for conducting a fair hearing."  JA 67.

**B.    Givens's complaint in federal district court.**

OAH's dismissal was predicated on developments following Givens's initiation of the instant suit in federal district court.  On February 5, 2020, Givens brought suit against various District officials under 42 U.S.C. § 1983.  JA 3 (ECF Record Document ("RD") 1).  As amended, JA 10-23, the complaint asserts that the District violated the Medicaid Act by (1) erroneously failing to deduct Givens's PEME when calculating her patient payability and (2) failing to schedule a hearing and render a final decision within 90 days of her request for a hearing.  JA 21.  Givens also sought to certify two classes comprising all current, future, and past (within three years) Medicaid applicants or recipients in the District who likewise suffered PEME-deduction errors ("Class A") or fair-hearing delays ("Class B").  JA 17.

On the PEME-deduction claim, Givens sought declaratory relief, an injunction ordering a proper PEME deduction for Givens and all Class A members, and "damages in an amount to be determined at trial." JA 22.  On the fair-hearing claim, Givens sought injunctive and declaratory relief only.  JA 22.  Givens also sought to recover attorneys' fees and costs.  JA 22.

Meanwhile, by April 2020, the District had recalculated Givens's patient payability and properly applied her PEME to her cost of care.  JA 37.  That recalculation reduced Givens's patient payability to $0 per month, retroactive to February 1, 2019.  JA 37.  On May 11 and 18, 2020, DHCF made corrected payments

7

to Stoddard.  JA 58, 61-62 (reflecting total overall payment of $93,660.74 for the period Givens received Medicaid).  And on May 11 and June 8, 2020, DHCF made corrected payments to Serenity.  JA 59, 61-62 (reflecting total payment of $57,986.92).  Overall, the District made $30,217.08 in corrective payments to the two nursing homes to cover $27,547.33 in expenses that had improperly been billed to Givens.  *See* JA 58-59.  Of those expenses, $20,420.36 had previously been paid to Stoddard by Givens's daughter, appellant Deborah R. Bowser.  JA 42.

### C.    Givens's death.

On December 24, 2020, Givens passed.  JA 70.  Givens's counsel filed a suggestion of death on January 25, 2021.  JA 70.  The suggestion of death stated that "[a] small estate proceeding for Givens will soon be filed in the D.C. Courts, and upon an estate representative being appointed, co-counsel will shortly thereafter file a motion pursuant to Fed. R. Civ. P. 25(a), to substitute Givens's estate representative as the putative class plaintiff in this case."  JA 70.

The District has not been made aware of any estate proceedings or the appointment of any estate representative.  In addition, no motion to substitute had been filed within 90 days of the suggestion of death, as required by Rule 25.  JA 6; *see* Fed. Rule Civ. P. 25(a).  The District subsequently moved, on April 29, 2021, to dismiss the case under Rule 25(a).  JA 6 (RD 27).

8

**D.    The magistrate judge's dismissal for mootness and failure to state a claim.**

On May 3, 2021—and without addressing the District's motion to dismiss under Rule 25—the magistrate judge issued his report and recommendation recommending dismissal.  JA 72.  The magistrate judge first held that both of Givens's individual claims were moot "because she received her sought-after relief."  JA 77.  In particular, the magistrate judge recognized that the District made the corrective payments to the nursing homes and granted Givens a hearing on her claims, and that any reimbursement claims by Givens "would be against the care facilities who may be 'double-dipping,' having now collected both from Givens and the District."  JA 78.  Further, because Givens had since passed, the magistrate judge held that the voluntary-cessation exception to mootness did not apply.  JA 78.

As for Givens's class claims, the magistrate judge recognized that "the general rule is that when an individual claim becomes moot prior to certification, the companion class claims are moot as well."  JA 79.  He then rejected two exceptions to this rule asserted by Givens.  First, Givens did not have a personal stake in obtaining class certification because her only asserted interest was "spreading litigation costs among potential class members."  JA 80.  Yet because "[e]very individual plaintiff could claim this interest," asserting it to save a class claim from mootness "has no limiting principle" unless it is cabined by "requiring *at least* a decision on class certification" first.  JA 80.  Because no such decision had been

made, Givens's Class A claims were moot. Second, the magistrate judge rejected Givens's reliance on the inherently transitory exception to mootness to save her Class B claims, because she did not plausibly allege that all class members would retain live claims at every stage of the litigation. JA 81. The magistrate judge further observed that Givens, "[w]hen amending her complaint, . . . could have added plaintiffs with live claims [or] . . . a declaration from such person(s)—yet she did not." JA 82.

Separately, the magistrate judge concluded that Givens's class and individuals claims failed to state a claim for municipal liability under Section 1983. Assuming, without deciding, that Givens had suffered violations of privately enforceable rights, JA 82-83, and accepting as true Givens's factual assertion that "40 individuals have suffered similar violations to the one[s]" she suffered, the magistrate judge nonetheless held that Givens had not plausibly alleged that the District had a policy or practice of enabling such violations. JA 84. The magistrate judge observed that 40 alleged calculation errors or delays "over a period of three years is a rather unremarkable proposition" in light of the roughly quarter-million District residents enrolled in Medicaid between December 2019 and December 2020. JA 85. And the "bare allegation" that 40 others had suffered similarly did not meet even the forgiving standards under which pleadings were to be evaluated at the motion-to-dismiss stage. JA 85. The magistrate judge wrote: "Exposing

10

municipalities to class liability for apparently rare administrative mistakes and backlog would be an unduly harsh result that risks reading out the policy/and or [*sic*] practice requirement for municipalities to be liable for civil rights violations."  JA 85.

> ### E.    Appellants' motions for substitution, for leave to file a proposed second amended complaint, and to object to the report and recommendation.

On May 16, 2021, appellants here—Givens's children, JA 89—moved for the first time to be substituted as plaintiffs.  JA 87.  By this point almost four months had passed since the suggestion of Givens's death was first filed and almost two weeks since the magistrate judge's report and recommendation.  Appellants simultaneously moved to object to the magistrate judge's report and recommendation, JA 87, 127-33, and to file a proposed second amended complaint, JA 87, 94-126.

In their objections to the report and recommendation, appellants argued that the fact that the District had made corrective payments to the nursing homes did not absolve the District of its liability under Section 1983 to reimburse Givens for her upfront payments.  JA 128. Appellants maintained that Givens "was damaged in the amounts that the District improperly forced [her] to pay."  JA 128.  Appellants also objected to the magistrate judge's conclusion that the first amended complaint had failed to state a claim for municipal liability for the District's alleged policy or

practice of failing to properly make PEME deductions and failing to render fair-hearing decisions within 90 days. JA 129-31. Appellants argued that information about these failures was information "peculiarly in the possession" of the District, which precluded Givens from pleading with greater particularity. JA 129. Finally, appellants objected to the conclusion that Givens's Class B claims were moot. JA 131-32. Appellants argued that the "inherently transitory" exception to the mootness doctrine applied to save the Class B claims from mootness. JA 132. They did not object to the magistrate judge's recommendation to dismiss the Class A claims as moot. JA 128-29.

Appellants' proposed second amended complaint contained the same allegations as the first amended complaint, with some minor differences. First, the proposed second amended complaint replaced the allegation of "40" instances of PEME-deduction and fair-hearing violations with the allegation of "hundreds, if not thousands" of such violations. JA 101. Second, the proposed second amended complaint defined the relevant classes as all "past and future" Medicaid applicants or recipients who suffered the alleged violations "from February 5, 2017 onward." JA 104. Finally, the proposed second amended complaint cited publicly available, aggregated statistics from OAH's website that showed that a certain percentage of all non-unemployment insurance hearings—a wider category than Medicaid hearings—were not resolved within 120 days in the 2018-2020 period. JA 102-03.

In June 2021, the magistrate judge granted in part appellants' motion to substitute "for the limited purpose of objecting to the Report & Recommendation." JA 136.  However, the magistrate judge stayed briefing on appellants' motion to file the proposed second amended complaint and withheld consideration of their motion to substitute for all other purposes, pending review of the report and recommendation.  JA 136 (quoting Fed. R. Civ. P. 12).  Appellants did not seek further review of the magistrate judge's limited substitution order or decision to stay briefing on the proposed second amended complaint.

### F.    The district court's dismissal for mootness and failure to state a claim.

On September 30, 2022, the district court adopted the report and recommendation in full and granted the District's motion to dismiss.  JA 162.

The district court first held that Givens's individual PEME-deduction claim was moot because the District had "made the corrective payments to the nursing homes."  JA 148.  The court specifically credited the magistrate judge's finding that Givens had "failed to allege injury specifically from the delays in corrective payments," JA 149, and that appellants had argued only that Givens was damaged "in the amounts that the District improperly forced [her] to pay" which were "to be determined at trial."  JA 149.  Because the District had made the corrective payments requested, Givens was thus "without any injury for which the District could compensate her."  JA 149.

13

The district court next held that Givens's individual and class fair-hearing claims were moot. JA 150, 153. The court noted that appellants failed to object to the magistrate judge's conclusion as to the individual claim and thus conceded it. JA 150. As for the Class B claim, the court agreed with the magistrate judge that "[t]he allegations in the Amended Complaint do not support application of the inherently transitory exception here." JA 151. The court noted that Givens's case "is unlike others in which the exception has applied because in those cases, the plaintiffs alleged that some members of the class continued to be injured at the time the named plaintiff's claims were mooted." JA 152.

Finally, the district court adopted the magistrate judge's conclusion that, in the alternative, Givens nonetheless failed to state a claim for relief for any of her allegations of municipal liability under Section 1983. JA 153. The district court noted that this Court has instructed Section 1983 plaintiffs to "plead the elements of the relevant type of municipal policy" that led to the alleged violation. JA 156 (internal quotation marks omitted). Givens's failure to identify any theory of municipal liability and to "allege such facts" was therefore "fatal to [her] claims." JA 156. In addition, the district court found that Givens "pled facts about only one incident"—her own—coupled with the "bare assertion" of 40 other similar incidents, "and that is not sufficient to impose [municipal] liability" under Section 1983. JA 158 (internal quotation marks omitted).

14

### G.     The district court's denial of reconsideration.

On March 26, 2023, the district court denied appellants' motion for reconsideration. JA 181. Appellants challenged the court's dismissal with prejudice as "a clear error," JA 165, on the basis that the district court ignored appellants' "pending motion to file a Second Amended Complaint," JA 165. The court rejected appellants' argument notwithstanding their unresolved motion for leave to file a second amended complaint. JA 175. Relevant here, the court rested its determination on the grounds that appellants are not plaintiffs in the case, as they had been substituted as parties only for the limited purpose of objecting to the report and recommendation, and not for the purpose of amending the complaint. JA 177. The court noted in particular that appellants had failed to object to the magistrate judge's order that stayed briefing on their motion for leave to amend the complaint and withheld consideration of their substitution motion for all other purposes. JA 177. Thus, no proper party had a pending motion to amend the complaint, and dismissal with prejudice was not improper. JA 178.

Appellants timely filed a notice of appeal. JA 182-183.

### STANDARD OF REVIEW

This Court reviews de novo district-court decisions granting motions to dismiss on grounds of mootness or for failure to state a claim. *See Zukerman v. U.S. Postal Serv.*, 961 F.3d 431, 441 (D.C. Cir. 2020). Denials of Rule 59(e) motions for

reconsideration are reviewed for abuse of discretion, but a ruling on the merits of a legal argument raised for the first time at the motion-for-reconsideration stage is reviewed de novo. *See Dyson v. District of Columbia*, 710 F.3d 415, 420 (D.C. Cir. 2013).

## SUMMARY OF ARGUMENT

The original plaintiff in this case, Givens, received all the relief she sought and has now passed away. Yet the current appellants, her children, seek to keep this suit alive through conclusory allegations of an unlawful municipal policy or practice under Section 1983, on behalf of a class that has not been certified. This litigation is not the proper vehicle for those claims, which have been mooted twice over and, in any event, fail to state a claim against the District.

1. Once the District made corrective payments to Givens's nursing-home providers and rendered final administrative action on Givens's case, she received all the relief she sought. That alone was enough to moot her individual claims. They are doubly moot because she has since passed away. And it is well-established that the mooting of the named plaintiff's individual claims before class certification renders the companion class claims moot as well. These basic jurisdictional principles suffice to support the district court's decision to dismiss. Appellants also fail to demonstrate that this case falls within any recognized exception that would

keep the class claims alive notwithstanding the mooting of Givens's individual claims.

2.  The district court correctly dismissed the first amended complaint for the independent, alternative reason that Givens failed to state a claim for relief.  Nothing in the complaint even identifies a theory of municipal liability, much less offers sufficient factual allegations to survive a motion to dismiss.  Appellants provide no additional clarity on appeal, nor do they identify any private right under the Medicaid Act that is enforceable through Section 1983.  Each of these deficiencies is alone enough to support the district court's judgment.

3.  Finally, dismissal with prejudice was warranted here.  Appellants were substituted for the very limited purpose of objecting to the magistrate judge's report and recommendation.  They failed to substitute as full parties to this action through mistakes of their own making and, as a result, were properly barred from amending Givens's pleadings.  In addition, their proposed second amended complaint does nothing to cure the deficiencies in the first amended complaint.  Under those circumstances, it was entirely proper for the district court to dismiss the suit with prejudice and to deny appellants yet another attempt to sustain this action in the absence of any live controversy.

17

**ARGUMENT**

**I.    All Of The Claims In The First Amended Complaint Are Moot.**

This lawsuit began because Givens was not provided a PEME deduction for the cost of her long-term care and then faced a delay in receiving a hearing to adjudicate her claim.  *See* JA 15-16.  By the time of the district court's ruling, JA 137, the District had corrected its patient-payability calculation, JA 59, Givens had received her requested hearing, JA 20, and she had subsequently passed away, JA 70.  All of Givens's individual claims against the District were mooted by these events, and no exception applies to save her class claims from the same result.

**A.    All of the individual claims against the District are moot.**

It has long been understood that federal courts are "not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it."  *United States v. Alaska S.S. Co.*, 253 U.S. 113, 116 (1920).  That is because Article III of the Constitution "restricts the authority of federal courts to resolving 'the legal rights of litigants in actual controversies.'"  *Genesis Healthcare Corp. v. Symcyk*, 569 U.S. 66, 71 (2013) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982)) (some internal quotation marks omitted).  This restriction is jurisdictional. *See Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)*.*  If circumstances "deprive[] the plaintiff of a personal stake in the outcome of the lawsuit, at any point

18

during the litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare*, 569 U.S. at 72 (internal quotation marks omitted).

When a court can no longer provide any "effective remedy" because the party bringing suit has "'obtained all the relief it has sought,'" the case is moot. *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (quoting *Monzillo v. Biller*, 735 F.2d 1456, 1459 (D.C. Cir. 1984)). Despite appellants' claims to the contrary, Givens long ago received all the relief that she could seek from the District. Those events required dismissal of her suit.

*First*, everyone agrees that District employees erred in miscalculating the amount Givens was required to contribute to the cost of her long-term care. *See* JA 37; Br. 26. And appellants concede that DHCF, upon learning of this error, retroactively paid to the nursing homes what it had been required to pay under its own policies and federal law. *See* JA 37, 39; Br. 27-28. Those facts suffice to moot Givens's individual PEME-deduction claim. Under the Medicaid Act, payments by a jurisdiction for a recipient's nursing-home care are directed to the provider, not to the patient. *See* 42 U.S.C. § 1396a(a)(32); 42 C.F.R. §§ 447.10(d), 447.25 (permitting states to pay certain beneficiaries directly only for "physicians' or dentists' services"); D.C. Medicaid State Plan § 4.20 (electing not to provide such payments in any event), https://dhcf.dc.gov/node/192872; 29 DCMR § 6500 *et seq.* (outlining reimbursement procedures for payments to nursing facilities). Federal

regulations governing the deduction of PEME make clear that those deductions increase the amount of payment to the provider, not to the recipient.  *See* 42 C.F.R. § 435.725(c)(4) ("In reducing its payment *to the institution*, the agency must deduct . . . [a]mounts for incurred expenses for medical or remedial care that are not subject to payment by a third party . . . ." (emphasis added)).  Givens even conceded this fact in the first amended complaint.  *See* JA 14 ("The nursing home is expected to . . . bill[] the Medicaid program for the difference between [what the patient was required to pay] and the amount it agreed to accept for providing services to Medicaid beneficiaries.").  Once the District made the corrected payments to the nursing home, it provided the "relief" that Givens properly "sought," and no court can now provide an "effective remedy."  *Conservation Force*, 733 F.3d at 1204.

Despite these facts, appellants claim that Givens's Section 1983 claim against the District remains live because there exists a "'direct causal link' between the District's policy or custom and the violation of Section 1983."  Br. 28-29 (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).  Because Givens paid out of pocket for her nursing-home care for almost a full year—costs for which, according

to appellants, Givens had "never been repaid," Br. 28—they contend that the District remains liable to her in damages for that original error, *see* Br. 29.[1]

Putting aside the fact that appellants have not plausibly alleged that any "policy or custom" of the District is responsible for the miscalculation, *see infra* Part II.A, this argument fails on its own terms. There is no "direct causal link" between Givens's *current* lack of reimbursement and the District's miscalculation. Once the District made the retroactive payments to the providers, it fulfilled all statutory and regulatory duties to Givens. *See* 42 C.F.R. § 435.725(c)(4); *see Lane v. District of Columbia*, 887 F.3d 480, 488 (D.C. Cir. 2018) (no "direct causal link" without a "predicate" violation). At that point, the only parties responsible for reimbursement were the nursing homes themselves. As appellants allege, the "nursing homes now have been paid twice—once by Givens and once belatedly by Defendants in April of 2020—for the care they gave to Givens from February 2019 through March,

---

[1]      Givens did not "allege injury specifically from the delays in corrective payments," JA 78, requesting only "monetary damages in an amount to be determined at trial" for the District's prior error in calculating her patient payability. JA 22. And she maintained below only that she "was damaged in the amounts that the District improperly forced [her] to pay." JA 149 (quoting Pls.' Objs., RD 33 at 2). The district court thus construed the claim for damages as a claim for *reimbursement* for the amount Givens was required to pay the nursing homes, and not as a claim for any additional injuries she suffered because of the delay in correcting that original error. *See* JA 149. Appellants appear to have conceded that finding on appeal. *See* Br. 27. They also appear to have conceded that the District's corrective payments mooted Givens's claims for injunctive and declaratory relief. *See* Br. 26-29.

2020." Br. 28.  The resolution of such a claim for unjust enrichment is a matter between the nursing home and Givens.

Indeed, if the District were liable in damages to Givens, local governments would be required to *overpay* when they erroneously compute patient payability: once to the providers, as mandated by statute, and once to the patient through a Section 1983 damages action.  Meanwhile, providers who benefit from the miscalculation could get an inexplicable and unauthorized windfall: double payment for services rendered.  Or, if recipients then brought a separate action for reimbursement, they, too, would get an inexplicable windfall: double payment for care received.  Appellants have provided no justification for this absurd result, which contravenes the structure of the Medicaid Act and threatens to saddle governments with unnecessary costs.

While acknowledging that the nursing homes are the parties responsible for Givens's lack of reimbursement, appellants nonetheless reply that "a plaintiff need not sue all defendants in one lawsuit on a cause of action." Br. 29.  That response is beside the point: appellants have no current cause of action against the District, which has met all its obligations under federal law.  And appellants have identified no case in which individuals in the position of Givens have been permitted to maintain claims for reimbursement against state agencies outside of the Medicaid enforcement scheme, let alone once errors in the calculation of their cost of care had

been rectified.  Givens's PEME-deduction claim against the District became moot as soon as the corrective payments were made.

*Second*, Givens's fair-hearing timeliness claim became moot once she received a decision from OAH.  On appeal, appellants appear not to contest this issue.  *See* Br. 30-31.[2]  Nor could they.  As OAH correctly found, once the District "corrected the adverse action that prompted the fair hearing request"—by making the required payments to the nursing home—there was "no basis for conducting a fair hearing."  JA 67; *see* 42 C.F.R. § 431.220(a)(1).  And once Givens received that "final administrative action" on her hearing request, 42 C.F.R. § 431.244(f), no further injunctive relief could be granted, *see* JA 22 (requesting an order requiring the District to render a decision).

Finally, all of Givens's claims for declaratory relief became moot at the same time as her claims for injunctive relief.  It is well settled that "the Declaratory Judgment Act does not 'extend' the 'jurisdiction' of the federal courts."  *Medtronic, Inc. v. Mirowski Family Ventures*, 571 U.S. 191, 197 (2014) (quoting *Skelly Oil Co.*

---

[2]    Though appellants note, in passing, that the "inherently transitory exception to the mootness doctrine" applies to save *both* "Givens's [individual] and proposed Class B's fair-hearing timeliness claims," Br. 30, that cannot be.  The inherently transitory exception applies to save *only* class claims, and it applies when "*individual* claims are inherently transitory, promising mootness before individual decision."  13C Charles Alan Wright et al., *Federal Practice and Procedure* § 3533.9.1 (Apr. 2023 update) (emphasis added).

*v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)).  And once the District took the actions that Givens sought to coerce through an injunction, the independent basis for federal jurisdiction evaporated.  *See id.* (declaratory relief creates federal jurisdiction only where a defendant is imminently threatening action that would violate federal law).

If any doubt remained, Givens's death dispelled it.  Although federal courts may maintain jurisdiction over certain claims when they become moot purely through a defendant's "voluntary cessation of a challenged practice," *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982), that exception does not apply here.  As the magistrate judge found, once Givens passed, "there [was] no 'reasonable expectation that [she] will be aggrieved by a similar' violation in the future."  JA 78 (quoting *Mundo Verde Pub. Charter Sch. v. Sokolov*, 315 F. Supp. 3d 374, 382 (D.D.C. 2018)); *see City of Mesquite*, 455 U.S. at 289 n.10 (exception does not apply when "subsequent events [make] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur").  Appellants failed to object to this finding and thus conceded it before the district court.  *See* JA 148.  They also do not contest it on appeal and therefore have forfeited any argument to this effect.  *See* Br. 26-29; *United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 434 (D.C. Cir. 2022).

Moreover, apart from her damages claim—which became moot once the corrective payments were made, *see supra* pp. 19-23—Givens sought primarily injunctive and declaratory relief, *see* JA 22.  Claims for such relief are mooted by the death of the party seeking the relief.  *See Cobell v. Jewell*, 802 F.3d 12, 23 (D.C. Cir. 2015).  Appellants have provided no reason why that result should not follow here.  Instead, they continue to contest the dismissal of at least some of Givens's individual claims, despite the fact that they have no statutory or regulatory basis for relief, and despite the fact that Givens passed away almost three years ago.

### B.    Uncertified class claims cannot keep this suit alive.

"Normally, the inquiry would end [there]"; however, appellants now seek to avoid dismissal of their suit by arguing that certain class claims remain live.  JA 79.  But once a putative class representative's claim on the merits is extinguished, as here, the class claims are generally extinguished, too.  *See Genesis Healthcare Corp.*, 569 U.S. at 74-75.  Class claims can survive the mooting of individual claims if the class has already been certified by the time of the mooting event and therefore has obtained a "separate" legal status.  *Sosna v. Iowa*, 419 U.S. 393, 399 (1975).  But that is not the posture here.  In fact, neither Givens nor appellants had yet moved for class certification by the time the district court dismissed the first amended complaint.  *See* JA 3-8.

Absent class certification, there are two circumstances where class claims might nevertheless persist in the face of individual claims that have become moot. First, when the individual claims become moot after an erroneous denial of class certification, "an appellate reversal of the certification decision may relate back to the time of the denial," such that the class claims persist. *J.D. v. Azar*, 925 F.3d 1291, 1308 (D.C. Cir. 2019); *see U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 & n.11 (1980). Second, courts have permitted the class claims to survive when the named plaintiff's claim is "inherently transitory" and other class members' claims are "certain" to persist throughout the litigation. *Azar*, 925 F.3d at 1308 (internal quotation marks omitted).

Neither of these exceptions apply to save Givens's class claims. As an initial matter, for Class A, appellants have not raised on appeal and have therefore forfeited any argument that an exception applies to save those claims. *See* Br. 26-29; *All Assets Held at Credit Suisse*, 45 F.4th at 434. Indeed, they did not even preserve the argument below because they failed to object to the magistrate judge's determination that the Class A claims expired alongside Givens's PEME-deduction claim. *See* JA 148. In any event, the magistrate judge's decision to dismiss the Class A claims was correct; appellants' claimed personal stake in spreading litigation costs, as they argued below, is relevant only to "appeal[ing] [] the denial of [a] class certification motion." *Geraghty*, 445 U.S. at 404; *see Richards v. Delta Air Lines, Inc.*, 453 F.3d

525, 528-29 (D.C. Cir. 2006).  There is no basis for asserting that an interest in shifting litigation costs alone can save a class claim from mootness before any ruling on certification—much less before any motion for certification.  *See Bd. of Sch. Comm'rs of Indianapolis v. Jacobs*, 420 U.S. 128, 129-30 (1975) (per curiam) (holding that "[b]ecause the class action was never properly certified nor the class properly identified by the District Court," the class claims became moot when the named plaintiffs' individuals claims became moot); *cf. Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135-36 (3d Cir. 2000) ("If . . . the putative class representative's individual claim becomes moot before he moves for class certification, then any subsequent motion must be denied and the entire action dismissed.").

As for Class B, appellants' reliance on the inherently transitory exception lacks merit.  That exception applies when (1) "the claims raised are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires" and (2) "it is *certain* that other persons similarly situated will continue to be subject to the challenged conduct." *Genesis Healthcare Corp.*, 569 U.S. at 76 (internal quotation marks omitted) (emphasis added); *see Azar*, 925 F.3d at 1311.  It "serves only to salvage claims that will, or at least might, not survive until certification." *Azar*, 925 F.3d at 1310.

Even assuming that the first condition is met, appellants have not carried their burden as to the second. The first amended complaint provides no factual material to support the claim that "some [class] members will retain a live claim at every stage of litigation." *Azar*, 925 F.3d at 1311. It alleges only that 40 individuals at some point in the past three years suffered hearing delays, *see* JA 17, without any allegation that such delays are ongoing or that any of those individuals' claims would remain live through the end of the litigation. Givens and appellants have consistently failed to identify any class members with ongoing live claims. *See* JA 81. As the district court noted, that failure differentiates this case from others that appellants cite to support their case. *See* JA 152 (citing *Azar*, 925 F.3d at 1312, and *Garnett v. Zeilinger*, 323 F. Supp. 3d 58, 69 (D.D.C. 2018)).

On appeal, appellants offer nothing more than selections of quotes from the first amended complaint, where Givens alleged future violations of proposed Class B's fair-hearing rights. *See* Br. 33. This does not carry appellants' burden. *See Reid v. Hurwitz*, 920 F.3d 828, 832 (D.C. Cir. 2019) (explaining that the party opposing dismissal "has the burden to prove that a mootness exception applies"). The sum total of factual material provided in the first amended complaint amounts to unsupported claims that (1) 40 people have not received timely hearings in the past 3 years (out of tens of thousands of total hearings at OAH, *see* JA 117), and (2) the District "will" continue to deny some class members timely hearings, Br. 32-33,

presumably for the duration of this litigation. But asserting that the District "will" violate federal law against some class members, without more, is not sufficient to demonstrate that it is "certain" that they will retain live claims at every stage of the litigation. It has now been almost four years since the complaint was first filed, *see* JA 3 (RD 1), and appellants have offered no explanation for their inability to locate any supposed class members with live claims, let alone those that will persist throughout the litigation, or to offer any further support for their contention.

Appellants cite decisions to the effect that the inherently transitory exception applies to cases concerning public benefits or hearings for those benefits, *see* Br. 31, but none is on point. In two, either the court found or the defendant conceded that the named class members suffered ongoing injuries and thus that their claims would remain live throughout the pendency of the litigation. *See Garnett*, 322 F. Supp. 3d at 68; *Wilson v. Gordon*, 822 F.3d 934, 945 (6th Cir. 2016). In another, the court did not even analyze whether all named plaintiffs would retain live claims throughout the litigation, assuming instead that the exception was met because the first condition was satisfied. *See Shakhnes ex rel. Shakhnes v. Eggleston*, 740 F. Supp. 2d 602, 613 (S.D.N.Y. 2010), *aff'd in part, vacated in part on other grounds sub nom. Shakhnes v. Berlin*, 689 F.3d 244 (2d Cir. 2012). And in *Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993), the court found that the district court had erroneously denied a motion for class certification that was pending by the time the

29

individual claims became moot, *see id.* at 938-39, and that therefore the class

certification should "relate back to the time of the filing of the complaint," *id.* at 939.

None of these cases stands for the proposition that the inherently transitory exception

can apply to save a mooted class claim when there has been no motion for class

certification and when there is no plausible contention that putative class members

will have live claims throughout the pendency of the litigation.

## II.     Even If The Claims In The First Amended Complaint Were Not Moot, They Fail To Establish Liability Under 42 U.S.C. § 1983.

Appellants' individual and class claims additionally do not plausibly allege

that the District is liable for any violations of the Medicaid Act.  To establish liability

under 42 U.S.C. § 1983, appellants must (1) "assert the violation of a federal *right*,

not merely a violation of federal *law*," *Blessing v. Freestone*, 520 U.S. 329, 340

(1997) (citation omitted), and (2) plausibly allege that a custom or policy of the

District caused the violation, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694

(1978); *cf. Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)

(describing a "two-step inquiry" consisting of first determining the predicate rights

violation and then assessing municipal liability).  Assuming for the sake of argument

that appellants have asserted the violation of a federal right, the first amended

complaint still does not plausibly allege that the District is liable under *Monell* for

that violation.  But appellants do not identify any federally enforceable rights that

the District violated, either.  Thus, even if the court finds that appellants' claims were improperly dismissed as moot, they still fail to state a claim for relief.

### A. The first amended complaint does not plausibly establish municipal liability for any alleged violation.

Regardless of whether appellants can establish the violation of a federal right under Section 1983, to survive a motion to dismiss they must plausibly allege that an "official municipal policy" of the District caused the violation. *Monell*, 436 U.S. at 691.  Yet the first amended complaint fails to allege anything more than now-rectified errors by specific District employees, and the second amended complaint does no better, *see infra* Part III.C.

"Generally speaking," an official municipal policy exists for the purposes of Section 1983 liability when

> (1) the municipality adopts a policy that itself violates [a federal right]; (2) the unconstitutional action was taken by a "policy maker" within the government; (3) the employees' unconstitutional actions "are so consistent that they have become [a] 'custom'" of the municipality of which the supervising policymaker must have been aware; or (4) the municipality knew or should have known of a risk of constitutional violations, but showed "deliberate indifference" to that risk by failing to act.

*Hurd v. District of Columbia*, 997 F.3d 332, 337 (D.C. Cir. 2021) (quoting *Baker*, 326 F.3d at 1306).  Each of these theories of municipal liability has "its own elements."  *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015).  To survive a motion to dismiss, a plaintiff must first plead the elements "of the relevant

type of municipal policy" and "indicate[] the contours" of that policy.  *Id.*  Next, a plaintiff must provide "adequate factual support to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The first amended complaint fails to identify any theory of municipal liability on which its claims could rest.  That failure alone is fatal under binding precedent. As this Court has held, "[i]f the plaintiff fails to identify the type of municipal policy at issue, the court [cannot] determine . . . whether the plaintiff had provided plausible support for her claim."  *Blue*, 811 F.3d at 20.  "Although the court could try to surmise which theory of municipal liability has the strongest support in the complaint, this is not [its] role."  *Id.*  Here, the complaint is silent as to any theory of municipal liability.  The complaint alleges only that the District has "a policy and/or practice" of failing to make proper PEME deductions and render Medicaid fair-hearing decisions within 90 days, and that, "over the last three years, the [District has] done so to over 40 persons."  JA 16.  On appeal, appellants have provided no more clarity, opting to repeat the first amended complaint's language about a "policy" or "practice."  Br. 32.  Alleging a "policy and/or practice," without more, does nothing to identify the theory on which appellants now rest their case.

Even if the Court were to scour the complaint for evidence of some theory, a favorable reading of the first amended complaint fails to implicate *any* of the established avenues of demonstrating municipal liability.  First, the complaint

nowhere alleges that the District has adopted an official policy that has caused the violations; to the contrary, it points to policies the District has allegedly failed to honor. *See* JA 21. Nor does the complaint contain any allegations that the named District officials have either "authority to 'establish governmental policy,'" *Singletary v. District of Columbia*, 766 F.3d 66, 73 (D.C. Cir. 2014) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)), or, if they did, that "the decision[s]" that led to the improper PEME deduction or delay in receiving a hearing were "made by" those officials, *id.* (quoting same). At most, then, the complaint could be read to gesture toward the remaining two theories of liability. But here, too, it falls short. It fails to allege that the relevant District officials "knowingly ignore[d] a practice" of PEME-calculation errors or fair-hearing delays "consistent enough to constitute [a] custom." *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004). And there are likewise no allegations that the District—or the named officials—"knew or should have known of the risk of" PEME-deduction errors or fair-hearing delays. *Baker*, 326 F.3d at 1307.

Even if this Court *could* "surmise" the theory on which appellants proceed, *Blue*, 811 F.3d at 20, it cannot invent plausible factual allegations where there are none. And the first amended complaint fails to meet its burden here, too. The critical element of every theory of municipal liability this Court has recognized is proof of causation—an "affirmative link" between the "municipal policy" and the alleged

33

"violation." *Baker*, 326 F.3d at 1306. Yet the first amended complaint, if anything, alleges the opposite: it is precisely the *failure* to follow official District policies that the complaint plausibly alleges harmed Givens. *See* JA 13-15 (outlining the policies the complaint claims were violated). Isolated actions taken in violation of official policy, without more, cannot establish municipal liability because the municipality is not the "moving force" behind them. *Monell*, 436 U.S. at 694. That is why the Supreme Court "has refused to accept § 1983 actions premised on theories of *respondeat superior*." *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981). And nothing in the complaint alleges—much less *plausibly* alleges—that the violations occurred at the direction, or through the deliberate indifference, of the relevant policymakers in the District.

To the contrary, the first amended complaint contains nothing more than factual allegations concerning Givens alone, coupled with a conclusory recital that the District has a "policy and/or practice" of committing the alleged violations and the unsupported claim that it has done so to "over 40 persons." JA 16-17. But a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The district court was therefore correct to hold that the

complaint does not "plausibly show anything more than apparently rare administrative mistakes." JA 159.

Appellants respond that they are forgiven even this minimal requirement because any relevant information is "peculiarly within the possession and control of the defendant." Br. 35 (quoting *Kelleher v. Dream Catcher, L.L.C.*, 263 F. Supp. 3d 322, 325 (D.D.C. 2017)). They cite in support of their position this Court's decision in *Judicial Watch, Inc. v. U.S. Department of Homeland Security*, 895 F.3d 770 (D.C. Cir. 2018). *See* Br. 39. That case provides no support for appellants' claim. First, *Judicial Watch* involved a "policy or practice" claim under the Freedom of Information Act ("FOIA"), not a municipal liability claim under *Monell*. *See Judicial Watch*, 895 F.3d at 776. Appellants have cited no case—nor is District aware of any—holding that the elements of each claim are the same or that allegations that would survive a motion to dismiss in the FOIA context must do so in the *Monell* context.

Even putting that aside, the complaint in *Judicial Watch* contained detailed allegations about nineteen specific violations of FOIA, all suffered by the plaintiff bringing the suit. *Id.* Conversely, here, there is only one factual allegation by the plaintiff, coupled with a "bare assertion," JA 159, that it has happened to 40 other individuals. If *Twombly* and *Iqbal* mean anything, it is that a plaintiff alleging municipal liability under Section 1983 must do more than this. To hold otherwise

would permit any plaintiff to survive the motion-to-dismiss stage by plucking a number out of thin air and pairing it with her individual grievance.

None of this means that Givens was required to provide "the names of specific Medicaid applicants/recipients," the "particular amounts of monies defendants failed to deduct," or "the exact number of days the [d]efendants took to render each of the fair hearing decisions." Br. 39. But a wide gulf exists between accessing confidential Medicaid information and simply alleging, without any factual support whatsoever, that enough similar violations are occurring to support a *Monell* claim. For example, appellants or Givens could have added additional named plaintiffs— yet they have not added a single one. Or they could have provided factual allegations about *some* of these alleged 40 instances of violations—but they have not done that, either. Nor have they provided a shred of evidence about a pervasive custom of violations, a District policymaker's deliberate indifference to the risk of violations, or an actual policy of the District that contravenes federal requirements. Instead, the record reflects in no uncertain terms that the longstanding position of DHCF has been that PEME "is considered as an income deduction in the calculation of patient payability." JA 39 (declaration of Alice M. Weiss, the Director of Health Care Policy and Research Administration for the District). There is thus no merit to appellants' claim that "there is no other information that the first amended complaint could have alleged about the substance of these violations." Br. 39.

**B. The first amended complaint does not assert the violation of any federal right.**

Putting aside appellants' failure to plead municipal liability, appellants also fail to establish a "predicate violation" of federal rights. *Baker*, 326 F.3d at 1306. Neither the magistrate judge nor the district court addressed whether the various provisions of the Medicaid Act at issue here confer individual federal rights enforceable through Section 1983. The court assumed as much and concluded that, even so, Givens did not plausibly plead a *Monell* claim. JA 82-83; *see* JA 153 (adopting this aspect of the report and recommendation).[3] And appellants have failed to argue this point on appeal. *See* Br. 34-40. This Court can, however, affirm the judgment below on this alternative basis. *See Wash. Reg'l Medicorp v. Burwell*, 813 F.3d 357, 361 (D.C. Cir. 2015).

As a preliminary matter, even if plaintiffs could establish that the Medicaid Act confers such rights, that showing creates only a "rebuttable presumption" of enforcement under Section 1983, which can be overcome if the statutory enforcement scheme "is incompatible with individual enforcement." *Blessing*, 520 U.S. at 341. And the Supreme Court has cast significant doubt on whether the Medicaid Act can be so construed to permit Section 1983 actions. *See Armstrong v.*

---

[3]    Contrary to the magistrate judge's suggestion, *see* JA 83 n.10, the District never "agree[d]" that any statutory provisions of the Medicaid Act are privately enforceable, *see* Defs. Mot. to Dismiss, RD 18 at 14-21.

*Exceptional Child Ctr., Inc.*, 575 U.S. 320, 330 n.* (2015) ("[O]ur later opinions plainly repudiate the ready implication of a § 1983 action" to enforce the Medicaid Act.). Indeed, the District is not aware of any case from this Court finding a privately enforceable right under any Medicaid Act provision, much less the ones at issue here.

Even to create a rebuttable presumption of an individual right enforceable under Section 1983, appellants must clear a "demanding bar." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 180 (2023). That is because "the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002) (internal quotation marks omitted). "[I]t is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority" of Section 1983. *Id.* at 283. Thus, courts have recognized that, "[f]or legislation . . . like the Medicaid Act, a state's non-compliance typically does not create a private right of action for individual plaintiffs." *Lankford v. Sherman*, 451 F.3d 496, 508 (8th Cir. 2006).

To determine whether a statute grants individual rights enforceable under Section 1983, courts employ a three-part test: "First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and

amorphous that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States." *Blessing*, 520 U.S. at 340-41 (internal quotation marks and citations omitted).

In relation to the first factor, courts must "employ traditional tools of statutory construction to assess whether Congress has 'unambiguously conferred' 'individual rights upon a class of beneficiaries' to which the plaintiff belongs." *Talevski*, 599 U.S. at 183 (quoting *Gonzaga*, 536 U.S. at 283, 285-86). In particular, a court must determine that Congress intended to benefit the identified class, "not merely that the plaintiffs 'fall within the general zone of interest that the statute is intended to protect.'" *Id.* at 183 (quoting *Gonzaga*, 536 U.S. at 283). This difficult standard is met only when "the provision in question is 'phrased in terms of persons benefitted' and contains 'rights-creating,' individual-centric language with an 'unmistakable focus on the benefitted class.'" *Id.* (quoting *Gonzaga*, 536 U.S. at 284).

Givens's claims of error in the administration of her Medicaid benefits are not privately enforceable through Section 1983. *First*, in connection with her PEME-deduction claim, Givens alleged violations of 42 U.S.C. § 1396a(a)(8) and (r)(1)(A)(ii). *See* JA 21. But notwithstanding the cursory citation to Section 1396a(a)(8) in her complaint, Givens never suffered a violation of that provision. The provision requires that a state Medicaid plan ensure that "all individuals wishing to make application for medical assistance under the plan shall have opportunity to

39

do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." Yet, as Givens conceded in the very first line of her complaint, her "nursing home bills and other expenses are paid for by Medicaid." JA 11. She already applied for "medical assistance"—defined as "payment of part or all" of the care requested "or the care and services themselves," 42 U.S.C. § 1396d(a)—which was "furnished" to her under the District's plan, *id.* § 1396a(a)(8). Section 1396a(a)(8) simply is not applicable here.

Rather, appellants continue to contest the miscalculation of Givens's cost of care—an entirely separate issue, governed by Section 1396a(r)(1)(A)(ii). But this provision does not confer an individually enforceable right. Congress requires states to include in their state plans "reasonable standards" for determining Medicaid eligibility and the extent of medical existence provided. 42 U.S.C. § 1396a(a)(17). That determination is governed in part by Section 1396a(r)(1)(A)(ii), which reads:

> For purposes of section[] 1396a(a)(17) . . . with respect to the post-eligibility treatment of income of individuals who are institutionalized . . . there shall be taken into account amounts for incurred expenses for medical or remedial care that are not subject to payment by a third party, including . . . necessary medical or remedial care recognized under State law but not covered under the state plan under this subchapter, subject to reasonable limits the State may establish on the amount of these expenses.

The language of this provision makes clear that it confers no individual rights. The provision works in tandem with Section 1396a(a)(17) to impose federal conditions on how *states* determine Medicaid eligibility and cost-sharing. And every

40

circuit that has examined Section 1396a(a)(17) has held that it does not create federal rights. *See Davis v. Shah*, 821 F.3d 231, 244 (2d Cir. 2014); *Hobbs v. Zenderman*, 579 F.3d 1171, 1181-83 (10th Cir. 2009); *Lankford v. Sherman*, 451 F.3d 496, 509 (8th Cir. 2006); *Watson v. Weeks*, 436 F.3d 1152, 1162-63 (9th Cir. 2006).

Just as Section 1396a(a)(17) does not create federal rights, nor does Section 1396a(r)(1)(A)(ii), which instructs states how to implement Section 1396a(a)(17)'s "reasonable standards." Section 1396a(r)(1)(A)(ii) deploys passive language directed at *states* ("there shall be taken into account"), not "individual-centric" language. *Talevski*, 599 U.S. at 183. Indeed, there is no mention of individuals at all in the operative language. The only mention of "individual" is a passing reference to the "income" of individuals who seek Medicaid funds, which is included in order to direct the *state* how to assess that income. Above all, the provision is not phrased with "*unmistakable focus* on the benefitted class," *Gonzaga*, 536 U.S. at 284 (internal quotation marks omitted). That is why no sister circuit has found it confers an individual right. *See Nasello v. Eagleson*, 977 F.3d 599, 601-02 (7th Cir. 2020) ("Plaintiffs have not cited, and we did not find, any appellate decision holding that district judges may enforce § 1396a(r)(1)(A) in private suits."). And decisions from the lower courts are to the same effect. *See Evangelical Lutheran Good Samaritan Soc'y v. Betlach*, No. 16-CV-8169, 2017 WL 3334870, at *6 (D. Ariz. Aug. 4, 2017);

*Wicomico Nursing Home v. Padilla*, No. 16-CV-1078, 2017 WL 4457770, at *2 (D. Md. Aug. 18, 2017).

*Second*, in connection with her fair-hearing claim, Givens also alleged a violation of 42 U.S.C. § 1396a(a)(3).  *See* JA 21.  That provision provides that "[a] state plan for medical assistance must . . . provide for granting an opportunity for a fair hearing before the State agency to any individual *whose claim for medical assistance* under the plan is denied or is not acted upon with reasonable promptness" (emphasis added).  Givens concededly received "medical assistance" under the Medicaid Act, *see* Br. 7, which, once again, is defined as "payment of *part* or all of the cost" of care, "or the care and services themselves," 42 U.S.C. § 1396d(a) (emphasis added).  What appellants contest is the amount she had to pay for that care.  *See* JA 11.  But if Section 1396a(a)(3) provides any federally enforceable right at all, it is to individuals with a claim for "medical assistance"—not, as here, to individuals who were provided that assistance but dispute their patient payability. *See Gean v. Hattaway*, 330 F.3d 758, 772-73 (6th Cir. 2003) (finding no federal right to a hearing under Section 1396a(a)(3) where plaintiffs received medical assistance but simply disputed their required contribution). At the very least, any fair-hearing right secured by Section 1396a(a)(3) is not "unambiguously conferred," *Talevski*, 599 U.S. at 183, to plaintiffs like Givens who have received the "medical assistance" that they have applied for but dispute their required financial contribution.

Beyond the Medicaid Act itself, the first amended complaint cites 42 C.F.R. § 431.244(f) in support of its fair-hearing claim. *See* JA 21. By regulation, a Medicaid recipient is permitted to seek a hearing whenever "he or she believes the agency has taken an action erroneously," 42 C.F.R. § 431.220(a)(1), and "ordinarily" such hearings must result in final agency action within 90 days of the request, 42 C.F.R. § 431.244(f). The proper inquiry, however, is whether the statutory provision *itself* provides a cause of action; only then may a court inquire whether implementing regulations may also be so enforced. *See Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."). But, as noted, the statutory provision here—if it creates any individual rights at all—permits private enforcement only for those seeking a hearing on their claim for "medical assistance." The implementing regulations thus provide for hearings in a much broader range of circumstances, not all of which may support a Section 1983 private right of action. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 173 (1994) ("[A] private plaintiff may not bring a [suit based on a regulation] for acts not prohibited by the text of [the statute itself.]"); *Sandoval*, 532 U.S. at 285 (holding that regulations that "do not simply apply" a statute cannot be enforced through its private right of action). Indeed, when the Second Circuit permitted private

43

enforcement of regulations implementing Section 1396a(a)(3), it did so specifically for plaintiffs "who requested or will request fair hearings to challenge the denial, reduction, or termination" of medical services, *Shakhnes*, 689 F.3d at 248; *see id.* at 254, not for plaintiffs seeking hearings simply to dispute their patient payability. Appellants thus cannot rely on the Medicaid regulations to conjure up a right the statute itself has not "unambiguously conferred." *Talevski*, 599 U.S. at 183.

**III.    The District Court Did Not Err In Dismissing The Complaint With Prejudice.**

Apart from challenging the basis for the district court's dismissal, appellants further challenge the decision to dismiss the first amended complaint with prejudice. Appellants maintain that the district court should have provided them yet another opportunity to amend their complaint because their motions to substitute as plaintiffs and to amend the first amended complaint remained unresolved before the magistrate judge. Those motions were concurrently filed—after the report and recommendation deeming the case moot issued—and held in abeyance by the magistrate judge pending the district court's review.

Appellants' position lacks merit: they are not proper parties to amend the complaint, and they are in front of this Court for a limited purpose purely through the discretion of the district court. What is more, substitution is entirely improper for failure to meet the requirements of Rule 25. And in any event, the proposed second amended complaint they wish to file does nothing to cure the deficiencies of

their first amended complaint.  If appellants wish to pursue these class claims against the District, this litigation is not the vehicle.

### A.    Appellants are not proper plaintiffs for the purpose of filing a second amended complaint.

Federal Rule of Civil Procedure 15 permits "a party" to amend its pleading with the opposing party's written consent or the court's leave.  Fed. R. Civ. P. 15(a)(2).  But appellants were never substituted as plaintiffs for the purpose of amending the complaint.  After Givens's death and her counsel's filing of the suggestion of death in January 2021, appellants waited until May—nearly four months later—to move for substitution as plaintiffs.  By that point, the report and recommendation had issued, and the magistrate judge accordingly granted substitution only in part, exclusively for "the limited purpose of objecting" to the report and recommendation. JA 136.  Filing an amended complaint is not within the ambit of the magistrate judge's grant of substitution, and appellants do not contend otherwise.

Appellants maintain that their motion for reconsideration in combination with their pending motion to amend the complaint should have saved their complaint from dismissal with prejudice.  But again, appellants were not substituted as parties for anything other than objecting to the report and recommendation.  JA 136; *see* JA 177-78 (concluding that appellants were "not plaintiffs" and so "no plaintiff had a pending motion to amend the complaint at the time of dismissal").  Indeed, the

magistrate judge made clear that adoption of his recommendation that the case is moot would deprive the court of the ability or need to decide the pending motions for want of jurisdiction.  *See* JA 7 (6/16/21 order noting that the recommendation related to "subject matter jurisdiction" and that lack of jurisdiction would require dismissing the entire action).  Appellants never objected to and have arguably waived any challenge to those rulings.  *See* D.D.C. LCvR 72.3(b) ("Failure to file timely objections may waive appellate review of a District Court order adopting the magistrate judge's report."); Fed. R. Civ. P. 72(a) (establishing with regard to nondispositive matters referred to a magistrate judge, a "party may not assign as error a defect in the order not timely objected to").  And on appeal, appellants affirmatively argue that the magistrate judge's decision did not amount to an abuse of discretion.  Br. 48-49.  As a result, they are in no position to challenge what is essentially their failure to foresee that the limited substitution order would affect their future ability to amend pleadings—despite the magistrate judge's express warning.  That is not an error this Court is required to remedy.

Appellants point to no case law supporting their position that dismissal amounts to reversible error in this posture.  Their citations (at 42-43) to *Belizan v. Hershan*, 434 F.3d 579 (D.C. Cir. 2006), *Brink v. Continental Insurance Co.*, 787 F.3d 1120 (D.C. Cir. 2015), and *Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996), are beside the point.  In each of these cases, this Court found dismissal with

prejudice improper when *parties to the case* had a pending motion to amend.  *See Belizan*, 434 F.3d at 582-83; *Brink*, 787 F.3d at 1128; *Firestone*, 76 F.3d at 1208. And in each of them, the error the district court committed was failing to determine whether the deficiencies in the complaint could be cured with an amended pleading. *See Belizan*, 434 F.3d at 584; *Brink*, 787 F.3d at 1128-29; *Firestone*, 76 F.3d at 1209. None of them stand for the proposition that dismissal with prejudice is erroneous when the Rule 15(a) motion to amend has been submitted by non-parties to the case.

### B.    Substitution would have been improper in any event.

As another reason why the district court's dismissal with prejudice was improper, appellants urge that it is "virtually certain" that the magistrate judge would have granted appellants' motion to substitute in full if given the chance.  Br. 44.  But full substitution would have been improper under Rule 25.

Once a suggestion of death is filed for a party to a case, the federal rules permit a court to "order substitution of the proper party."  Fed. R. Civ. P. 25(a)(1).  But the text of the rule provides three important limitations.  First, substitution is permissible only when "the claim is not extinguished" with the death of the original party.  *Id.* Second, it contains a mandatory time limit: "[i]f the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent *must* be dismissed."  *Id.* (emphasis added).  And third, even if these first

two limitations are met, substitution is discretionary: the court "may" order substitution of the proper party, but it is not required to do so. *Id.*

Appellants failed to meet the requirements of Rule 25. *First*, as demonstrated previously, all of Givens's claims were mooted before or by her death. *See supra* Part I.A. The mooting of the claims rendered them "extinguished," making substitution under Rule 25 improper. Fed. R. Civ. P. 25(a); *see Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 846 n.10 (D.C. Cir. 1982) (recognizing that "mootness" can "extinguish[]" a claim).

*Second*, even if all of Givens's claims were not extinguished, appellants nonetheless failed to meet the 90-day timeline to substitute. Dismissal is mandatory under Rule 25 when a motion to substitute is not made within 90 days of the filing of the suggestion of death. *See Lightfoot v. District of Columbia*, 629 F. Supp. 2d 16, 18 (D.D.C. 2009) (noting that dismissal is "required" when a motion to substitute is not made within 90 days of the suggestion of death); *Worley v. Islamic Republic of Iran*, 75 F. Supp. 3d 311, 333 (D.D.C. 2014) (same). Here, contrary to their assertion, appellants did not do "everything possible to be substituted as plaintiffs." Br. 46. In fact, appellants did not even do the bare minimum of meeting the explicit

timeline in the federal rules, nor did they request an extension of time. *See* Fed. R. Civ. P. 6(b). And they have provided no explanation for these failures.[4]

*Third*, even assuming that appellants' motion to substitute was not barred by the claim-extinguishment and timeliness requirements of Rule 25, the magistrate judge was still not required to substitute them as parties. Under the circumstances, the magistrate judge reasonably exercised his discretion to grant substitution in part, "for the limited purpose of objecting to the Report & Recommendation," JA 136—although it is unclear that the magistrate judge even retained such discretion, given Rule 25's mandatory instruction to dismiss untimely motions.[5] If any error occurred,

---

[4]    Before the district court, appellants claimed that because their own suggestion of death did not indicate the legal representative to be named, the 90-day clock never started running. Reply Mem., RD 37 at 9-11. The case law on which they relied, however, stands for proposition that it is unfair to run the 90-day clock against the plaintiff when *the defendant* has died and failed to indicate the legal representative in the suggestion of death. *See Rende v. Kay*, 415 F.2d 983, 985 (D.C. Cir. 1969); *see also id.* at 986 (reasoning that the "plaintiff" should not bear "the burden of locating the representative of the estate"). That is not the situation here. Appellants' delay in naming a successor in the litigation is particularly inexcusable because two of the appellants were involved in the lawsuit from the beginning, having filed it as attorneys-in-fact on behalf of their mother. *See* JA 10.

[5]    Prior to the 2007 amendments to the federal rules, Rule 25 instructed the action "shall" be dismissed if no motion to substitute was made within 90 days. The initial revision to Rule 25 substituted "may" for "shall," but the Committee decided that "it is better to replace 'may' with 'must.'" Fed. R. Civ. P. 1 ("Committee Notes on Rules—2007 Amendment"). This drafting history suggests that the Committee has explicitly rejected providing judges with discretion to waive the 90-day time limit.

it was arguably the error of *permitting* any substitution whatsoever, not the error of *failing* to permit substitution for a broader purpose.

### C. Moreover, granting leave to amend would have been futile.

Even if appellants had been in a position to file a proposed second amended complaint, dismissal with prejudice was proper. Leave to amend is appropriately withheld in circumstances of "undue delay . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, the District would be unduly prejudiced by granting appellants the ability to have their "proverbial cake and eat it too by first opposing a motion to dismiss on the merits (thereby forcing the court to resolve the motion to dismiss), and then, upon losing the motion, amend[ing] [their] complaint to correct the very deficiencies [they] refused to acknowledge previously." *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 135 n.11 (D.D.C. 2013). Such tactics also needlessly prolong litigation and waste judicial and party resources.

Moreover, the proposed amended complaint will not cure the deficiencies in the first complaint. *See Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 945 (D.C. Cir. 2004) ("[A] district court has discretion to deny a motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss."), *abrogated on other grounds by Cohen v. United States*, 650

F.3d 717 (D.C. Cir. 2011) (en banc).  Appellants assert that their proposed second amended complaint is not futile because: (1) it alleges "hundreds, if not thousands" of violations of the PEME-deduction requirements, Br. 51 (quoting JA 101); (2) it likewise alleges "thousands" of failures to render fair-hearing decisions within 90 days, using aggregated statistics from the District's Office of Administrative Hearings, Br. 53-54 (citing JA 101-03); and (3) it "repeatedly states that Defendants 'will fail' to abide by, and 'will violate' the PEME rules," Br. 51 (quoting JA 104-05, 107-08), and that "Defendants 'will fail' to abide by, and 'will violate' the fair-hearing timeliness requirements," Br. 52 (quoting JA 104-05, 107-08).

Appellants' second effort fares no better than Givens's original amended complaint.  To begin, it does nothing to remedy the fact that all individual and class claims are moot.  The sole amendment that could possibly affect the mootness of the Class B claims is the replacement of one number of similarly delayed cases (40) with a vaguer and larger number (hundreds, thousands).  But that bare assertion, coupled with no facts to render it in any way plausible, cannot wedge the fair-hearing timeliness claims into the inherently transitory exception to mootness, for all the reasons previously explained.  *See supra* Part I.B; *Twombly*, 550 U.S. at 557.  Nor does it suffice to repeatedly use the future tense—alleging, without more, that the District "will" violate the rules—to establish that the exception applies.

Likewise, the proposed complaint still does not state a plausible claim for relief.  The district court dismissed the first amended complaint for failure to state a claim because under *Monell* it is insufficient to rely on facts about one set of violations—those that occurred to Givens alone—coupled with the "bare assertion" of 40 other such violations.  JA 159.  The proposed second amended complaint merely inflates that number, with no added factual support.  But that does not address the underlying insufficiency of the factual allegations to show a municipal policy or practice.  The mere fact that something happens multiple times neither identifies a clear theory of municipal liability, *see supra* pp. 32-33, nor shows that a policy is the "moving force" behind the purported violations, *Monell*, 436 U.S. at 694.

The aggregated statistics cited in the proposed second amended complaint, which appellants claim provide factual support for their fair-hearing claims, show nothing of the sort.  The statistics are not specific to Medicaid cases but include decisions rendered in all non-unemployment insurance cases filed at OAH.  JA 110-26.  Those include "cases involving more than 40 District of Columbia agencies, boards, and commissions," *About*, OAH, https://oah.dc.gov/page/about (last visited Nov. 2, 2023), many of which are not subject to Medicaid's 90-day fair-hearing requirement.  Even under a liberal pleading standard, courts are not required to make the extraordinary inferences required to credit appellants' allegations: namely, that

timeliness statistics applicable to *all* non-unemployment insurance cases necessarily mirror statistics for the subset of Medicaid hearings handled by OAH.

Appellants' minor tweaks to language, coupled with irrelevant aggregate statistics pulled from a public website, do little to change the underlying deficiencies in the first amended complaint.  Therefore, even assuming that appellants were proper parties to file an amended complaint, it was not an abuse of discretion for the district court to deny leave to amend the complaint and dismiss the case with prejudice.

## CONCLUSION

For the foregoing reasons, this Court should affirm the decision below.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

/s/ Thais-Lyn Trayer
THAIS-LYN TRAYER[*]

Deputy Solicitor General
Office of the Solicitor General

Office of the Attorney General
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 255-3681
November 2023                         thais-lyn.trayer@dc.gov

---

[*]     The undersigned would like to thank Russell C. Bogue for his invaluable assistance in authoring this brief.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 12,906 words, excluding exempted parts.  This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

/s/ Thais-Lyn Trayer
THAIS-LYN TRAYER