No. 23-7042

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

ANTHONY D. GIVENS, *et al.*,
APPELLANTS,

v.

MURIEL BOWSER, *et al.*,
APPELLEES.

ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**APPELLEE THE DISTRICT OF COLUMBIA'S OPPOSITION
TO APPELLANTS' MOTION FOR JUDICIAL NOTICE**

Five months after oral argument, appellants now ask this Court to sift through thousands of lines of data to find facts that they claim will compensate for their own failure to plead their case. Worse still, the factual record appellants ask this Court to establish for the first time on appeal consists of self-computed statistics pulled from a response to a D.C. Freedom of Information Act ("FOIA") request filed two days after argument—a response appellants received over three months ago. In every respect, this motion is improper. Appellants cannot belatedly amend their complaint because they were not substituted as proper parties to do so, and the time

for amending the complaint is long past. Even if that were not the case, they have failed, as a threshold matter, to specify what facts they wish this Court to take notice of. And regardless, nothing they have submitted is properly the subject of judicial notice, nor does it remedy the deficiencies in the original complaint. This Court should thus deny appellants' tardy attempt to amend their complaint for the third time.

## ARGUMENT

**I.  Appellants Cannot Belatedly Amend Their Complaint Five Months After Oral Argument In This Appeal.**

Appellants effectively seek to amend their complaint on appeal via judicial notice. The Court should reject this late-breaking gambit. On February 15, 2024, two days after the Court heard oral argument in this case, appellants submitted a FOIA request to the D.C. Office of Administrative Hearings ("OAH") asking for information on every Medicaid appeal taken from the Department of Health Care Finance ("DHCF"), including the date of filing and the date of final disposition. *See* Mot. Ex. A. They received a response to their request on April 5. *See* Mot. Ex. A. Over three months later, appellants are now asking this Court to take judicial notice of "the FOIA request and response" for the purpose of assuring itself that appellants' claims both remain live and adequately allege that the District has a pattern or practice of delaying final action in Medicaid cases. Mot. 4, 6.

Appellants' request that this Court take judicial notice of facts disclosed in the FOIA documents amounts to a request to amend their first amended complaint. Ordinarily, to be considered on a motion to dismiss, external documents must be included or incorporated in the original complaint. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Courts may, however, "consider documents attached to a motion to dismiss if they are 'referred to in the complaint,' integral to the claim(s), and if their authenticity is undisputed." *Langeman v. Garland*, 88 F.4th 289, 291-92 (D.C. Cir. 2023) (quoting *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004)). But appellants neither referred to the FOIA document in their complaint nor attached it to their motion to dismiss. *See* Mot. Ex. A. Instead, they ask this Court to amend their pleading with a document that did not exist until three months ago.

For all the reasons explained in appellees' brief, appellants' substitution "for the limited purpose of objecting" to the magistrate judge's report did not permit them to amend their complaint below. JA 136; *see* District Br. 45-49. And they should certainly not be allowed to retroactively and impermissibly amend their complaint on appeal in the guise of a motion for judicial notice. That is both beyond the purview of their limited substitution and procedurally improper at this late date. *Cf. Daugherty v. Sheer*, No. 22-5103, 2023 WL 6380539, at *2 (D.C. Cir. Oct. 2, 2023)

3

(district court had "sufficient reason" to deny leave to amend where parties had "delayed unduly before moving to amend").

**II.    The FOIA Request And Response Are Not Subject To Judicial Notice.**

Beyond the impropriety of appellants' belated attempt to inject new facts into this long-pending appeal, their request fails on another, independent ground: The FOIA request and response are not the proper subject of judicial notice, for at least two reasons.

*First*, appellants have failed, as a threshold matter, to specify what facts should be judicially noticed.  And the Court is not obligated to take notice of unspecified facts.  Throughout appellants' motion, the target of their request shifts.  At times, the motion asks this Court to judicially notice the simple fact that appellants have filed a FOIA request and received a response from the District.  *See* Mot. 4 (asking the Court to take judicial notice of the FOIA "request" and "the District's response to that request").  Appellants subsequently indicate that the Court should judicially notice the *contents* of the FOIA response, which consists of thousands of lines of data on individual OAH appeals resolved in the last eight years.  *See* Mot. 6.  Yet nowhere do appellants explain what, if any, facts should be "ascertained" from this pile of data, 21B Charles Alan Wright, et al., *Federal Practice and Procedure: Evidence* § 5106 (2d ed., June 2024 update) [hereinafter "Wright & Miller"], nor do they explain how those facts are relevant to this case.

4

As a last resort, appellants finally suggest that this Court should take judicial notice of statistics that appellants *themselves* have apparently calculated from these data, which they claim show that OAH fails to render a final disposition within 90 days in some percentage of Medicaid appeals. *See* Mot. 6-7.

This Court should not bless appellants' attempts, through imprecision, to evade their obligation to "supply[]" the court "with the necessary information" to "judicially notice *a fact*." Fed. R. Evid. 201 (emphasis added). "[J]udicial notice is taken of facts, not documents." Wright & Miller § 5104. And the Court is under no obligation of its own to guess what facts should be judicially noticed. *See* Fed. R. Evid. 201(c)(1) (a court "may" take judicial notice on its own, but it is not required to). Appellants' request may be denied on this ground alone.

*Second*, nothing appellants have proposed is a proper subject of judicial notice. Even under the most conservative reading of their request—that is, even if appellants hoped to establish only that they made a FOIA request and received response—those facts would be "irrelevant to disposition of the motion to dismiss" and thus not a proper subject for judicial notice. *Whiting v. AARP*, 637 F.3d 355, 364-65 (D.C. Cir. 2011) ("[T]he matters to be noticed must be relevant."). The mere fact that appellants made a belated FOIA request long after the dismissal of their complaint has no bearing on the district court's earlier dismissal.

5

Moreover, neither the contents of the FOIA response nor appellants' in-house calculations come close to clearing the high bar set by the Federal Rules of Evidence for establishing facts by judicial notice. Courts may take judicial notice only of a "fact that is not subject to reasonable dispute," such as when the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). For a fact to be indisputable, it must be "beyond reasonable controversy." Fed. R. Evid. 201, Advisory Committee Notes subdiv. (b). Movants bear the burden of providing indisputability. *See* Wright & Miller § 5106.2. They can do so when, for instance, the accuracy of the source relied upon is "commonly known," has been "proved by evidence," or has been "shown by some method independent of the source itself." *Id.* Almanacs, calendars, maps, encyclopedias, and dictionaries are the types of sources courts typically accept as those "whose accuracy cannot reasonably be questioned." *Id.*

The FOIA response prepared by OAH does not qualify as such a source. For a variety of reasons, courts have nearly uniformly declined to take judicial notice of the content of responses to FOIA requests. *See Gratsy v. Cambridge Integrated Servs. Grp. Inc.*, Nos. 12-9141 & 13-2522, 2014 WL 5543933, at *4 (N.D. Ill. Nov. 3, 2014) (refusing to take judicial notice of a FOIA response); *Geary v. Parexel Int'l Corp.*, No. 5:19-CV-7322, 2023 WL 2576836, at *3-*4 (C.D. Cal. Mar. 20, 2023) (similar); *Carrigan v. Archdiocese of Milwaukee*, No. 22-CV-1084, 2023 WL

6

6810073, at *3 (E.D. Wisc. Oct. 16, 2023) ("[T]he court does not find that the accuracy [of FOIA responses] 'cannot reasonably be questioned.'"); *Fair v. Esserman*, No. 3:15-CV-681, 2015 WL 7451154, at *4 (D. Conn. Nov. 23, 2015) ("FOIA requests are not a proper subject for judicial notice."); *In re Am. Apparel, Inc. Shareholder Litig.*, 855 F. Supp. 2d 1043, 1064 (C.D. Cal. 2012) (refusing to take judicial notice "of the truth of the documents' contents"). Though the District strives always to provide truthful and relevant information in response to a FOIA request, the "recordkeeping practices" of OAH, "like those of any large organization, are by their very nature not free of error." *Gratsy*, 2014 WL 5543933 at *4. Nor are their contents matters of public record. *Cf. Covad Cmmc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (holding that courts may take "judicial notice of facts on the public record," such as records of another proceeding). For these reasons, OAH's FOIA response does not qualify for judicial notice.

The cases appellants cite in support of their motion serve only to underscore this point. Appellants argue that the contents of the FOIA response are subject to judicial notice because this Court has taken judicial notice of "documents from . . . administrative agencies." Mot. 5. But the most they can point to are examples of this Court taking judicial notice of public records filed in trial court, *see United States v. Manning*, 841 Fed. App'x 242, 243 (D.C. Cir. 2021); *Am. Council of the Blind v. Mnuchin*, 878 F.3d 360, 365 n.4, 366 n.8 (D.C. Cir. 2017), public

documents posted on official agency websites, *see Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013); *Williams v. Lew*, 819 F.3d 466, 473 (D.C. Cir. 2016), and reports from the Congressional Research Service and the U.S. Department of State establishing basic geopolitical facts, *see Kareem v. Haspel*, 986 F.3d 859, 866 n.7 (D.C. Cir. 2021). Such documents are a far cry from data compiled specifically in response to a one-off FOIA request.

Still less do appellants' *own calculations*—provided without explanation or proof—come anywhere near the standard established by Rule 201. Appellants claim to have calculated that OAH has failed to resolve cases within 90 days of a hearing request in 50.6% of cases from January 6, 2016, to March 14, 2024. Mot. 6. But appellants do not explain how they calculated this number. Nor do they provide the District or the Court with an easy way of verifying these numbers. And, as discussed below, they fail to include the information necessary to determine the relevance of the numbers to their underlying claims. The say-so of a litigant doing its own analysis of an Excel spreadsheet does not provide this Court with the "verifiable certainty" it needs to judicially notice a fact. Wright & Miller § 5104.

### III. The FOIA Response Does Not Cure The Deficiencies In The First Amended Complaint.

Finally, even if the FOIA response contained facts of which this Court could take judicial notice, those facts would do nothing to cure the deficiencies of the first amended complaint. Contrary to appellants' contentions (Mot. 2), the data fail to

show that some members of appellants' proposed fair-hearing class will "retain a live claim at every stage of the litigation," *J.D. v. Azar*, 925 F.3d 1291, 1311-12 (D.C. Cir. 2019), or to plausibly allege that the District is liable for any delays under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Fundamentally, it is not clear that the District routinely takes 90 days to resolve Medicaid fair-hearing claims bearing any resemblance to Givens' claims. Taken as true, the FOIA response and appellants' calculations show that some significant percentage of appeals from DHCF decisions "concerning Medicaid" took longer than 90 days to reach a final disposition. Mot. 3, 4. But that is not a useful metric. On its face, the FOIA response appears to include *all* dispositions arising from DHCF appeals, including many voluntary dismissals and petitioner no-shows. *See* Mot. Ex. B. And yet the regulation that appellants seek to enforce requires only that "final administrative action" be taken "ordinarily" "within 90 days." 42 C.F.R. § 431.244(f)(1)(ii). Although the Medicaid regulations do not define "final administrative action," courts have construed it to mean "the issuance of decisions after fair hearings." *E.g., Shakhnes v. Berlin*, 689 F.3d 244, 254 (2d Cir. 2012). It is far from clear that a Medicaid appeal that ends in a voluntary dismissal or a petitioner no-show receives a "final administrative action" subject to the deadline.

Perhaps more importantly, the District is not liable under *Monell* for failing to close cases within 90 days if petitioners drag their feet, pursue settlement, or fail to

9

appear for hearings. *See, e.g.*, 42 C.F.R. § 431.244(f)(4)(i) (excusing state agencies from the 90-day requirement when "the appellant requests a delay or fails to take a required action" or "[t]here is an administrative or other emergency beyond the agency's control"). Indeed, this case provides one example of how timelines can be lengthened through no fault of the District's: Givens's lawyer was unprepared for the initial hearing and requested a continuance. *See* JA 27. The FOIA response provides no way of knowing what percentage of the included cases present similar situations. It thus furnishes no support for a theory that the District has, for instance, a "custom" of delaying fair-hearing decisions or has shown "deliberate indifference" to a known risk of such delays. *Hurd v. District of Columbia*, 997 F.3d 332, 337 (D.C. Cir. 2021).

In addition, the FOIA response appears to include appeals from *all* Medicaid-related DHCF decisions. *See* Mot. Ex. B. It does not show what percentage of the total cases concerned appeals from Medicaid *payability determinations*—the specific claim at issue in this case. *See* JA 17, 21. It thus cannot be used to support appellants' claim that some members of the class will retain a live claim throughout the litigation. *See Azar*, 925 F.3d at 1311-12.

Finally, appellants' submissions do not indicate how *much* longer than 90 days these various appeals have taken to resolve. The calculations do not distinguish between a case resolved in 91 days and one resolved in 180 days. That difference

may matter. Even assuming that individuals have a federally enforceable right to a hearing decision within 90 days, a delay of just a few days is only a de minimis infringement of that right. *See, e.g.*, *Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned."). Likewise, the District may still be found to be in "substantial compliance" with the regulatory deadlines if the delays are typically only a few days in length. *Shands v. Tull*, 602 F.2d 1156, 1161 (3d Cir. 1979). But the FOIA response provides no way of distinguishing serious delays from minor ones.

Appellants' attempt to augment their complaint with additional facts thus would do nothing to cure its underlying deficiencies. Indeed, the inadequacy of the data serves only to underscore that it would be improper for this Court to judicially notice the FOIA response in the first place.

## CONCLUSION

For the foregoing reasons, this Court should deny appellants' request for judicial notice.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

THAIS-LYN TRAYER
Deputy Solicitor General

/s/ Russell C. Bogue
RUSSELL C. BOGUE
Assistant Attorney General
Office of the Solicitor General

Office of the Attorney General
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 531-4695
russell.bogue@dc.gov

July 2024

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the type-volume limitation in Federal Rule of Appellate Procedure 27(d)(1) because the motion contains 2,548 words, excluding exempted parts. This motion complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

/s/ Russell C. Bogue
RUSSELL C. BOGUE